.IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SYLVESTER LEWIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-2209-MAB |
| | ) |
| **ANDY STOUT, KEVIN KINK, and** | ) |
| **STEPHEN RITZ,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Stephen Ritz, M.D. (Doc. 47). For the reasons set forth below, the motion is denied.

### PROCEDURAL BACKGROUND

Plaintiff Sylvester Lewis is an inmate in the Illinois Department of Corrections. On December 26, 2018, he filed this lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center (Doc. 1; Doc. 14). More specifically, he alleged that his cell was infested with bugs and that various prison officials were deliberately indifferent to his chronic and sustained ear problems, which included the removal of bugs from his ears on multiple occasions. Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

    **Count 1:**    Eighth Amendment claim against Andy Stout and Warden Kevin Kink for deliberate indifference to inadequate living conditions.

    **Count 2:**    Eighth Amendment claim against Dr. Stephen Ritz for deliberate indifference to serious medical needs.

(Doc. 14).

Dr. Ritz filed a motion for summary judgment in February 2020, arguing that there is only one relevant, fully exhausted grievance but it cannot be used to exhaust as to him because he was not named or described in the grievance (Docs. 47, 48).[1] Plaintiff filed a response in opposition to the motion for summary judgment (Docs. 73, 74, 75). Dr. Ritz did not file a reply brief. After reviewing the parties' briefs, the Court determined there are no issues of fact and a hearing is not necessary.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A]

---

[1] Defendants Andy Stout and Kevin Kink did not move for summary judgment on the issue of exhaustion.

judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The regulations first require an inmate to file

his or her grievance with his or her counselor. *Id.* at § 504.810(a).[2] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id.* at § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or must appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board for a final determination ("ARB"). *Id.* at § 504.850(a).

The regulations also require, in pertinent part, that the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c) (2017). If the offender does not know the names of the individuals involved, he must instead include as much descriptive information about the individual as possible. *Id.*

## FACTUAL BACKGROUND

The medical records that Plaintiff attached to his complaint show that he was seen in early March 2018 in the prison healthcare unit ("HCU") for continuing ear pain and drainage (Doc. 1, pp. 16, 30). He was diagnosed with a middle ear infection (otitis media) and earwax impaction and given a ten-day course of antibiotics (*Id.* at p. 30) Plaintiff's ear issues persisted, and he was seen every few weeks over the course of the next three months and given various treatments, including antibiotics, drops to remove ear wax

---

[2] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

buildup, and over-the-counter pain medication and allergy medication (*Id.* at pp. 34–49). Dead bugs were removed from his ear(s) on multiple occasions (*Id.* at pp. 32, 44). On July 17, 2018, a nurse practitioner diagnosed Plaintiff with "complicated otitis media" and noted that he had been "treated with at least six different antibiotics over the last six months for ear infections" (*Id.* at pp. 49, 53). She referred Plaintiff to an ENT, and the referral request indicated that he had a long history of complicated ear infections and was at risk for hearing loss if the ear infections continued to occur this frequently (*Id.* at p. 53). The referral was reviewed in Collegial Review by Dr. Ritz and denied (*Id.* at pp. 18, 56). The referral was represented on July 26th and denied again by Dr. Ritz (*Id.* at pp. 17, 54). The referral was denied a third and fourth time by Dr. Ritz on August 2nd and August 9th (*Id.* at pp. 25, 26, 48, 52).

The only relevant grievance is emergency grievance #09-18-13, which was submitted in July 2018 (Doc. 48-2).[3] [4] In this grievance, Plaintiff complained that he was having an issue with bugs in his cell that got into his ears (Doc. 48-2). He further indicated that he went to healthcare and had ants removed from his ears in March and May 2018

---

[3] Plaintiff also mentioned that he filed an emergency grievance on March 3, 2018 (#04-18-70) (Doc. 73-1, p. 1). In this grievance, Plaintiff complained about bugs in his cell and asked to be moved to a different cell (*Id.*). He did not mention anything about his ears or the medical care he was receiving in the grievance (*see id.*). And there is also no indication that this grievance was fully exhausted (*see id.*). Consequently, this grievance cannot be used to exhaust as to Dr. Ritz.

[4] At the top of the grievance, it appears to be dated July 7th (*Id.*). The body of the grievance, however, indicates that the date is July 17th (*Id.*). Specifically, Plaintiff wrote that he had "to go to healthcare today for my ear July 7/17/18" (*Id.*). The medical records attached to the complaint indicate that Plaintiff had a medical appointment on July 17th, but not July 7th (*see* Doc. 1). Furthermore, the grievance indicates that the grievance was received by the warden for emergency review on July 20th (Doc. 48-2). Collectively, the evidence suggests that the grievance was submitted on July 17th, not the 7th. But the precise date on which it was submitted is immaterial to the Court's analysis.

and a "black bug" removed from his ear in June 2018. He stated that he was still having problems with his ears and had a healthcare appointment that day for his ear. In the "relief requested" section of the grievance, Plaintiff wrote, "at time my ears still hurt a lot they are red inside of ears, I need to see a outside ear doctor."

The warden denied the grievance was an emergency on July 20th (Doc. 48-2). Plaintiff's counselor received the grievance on July 25th and denied it on August 14th, stating "Per HCUA Cunningham, as documented in medical chart, [Plaintiff] has been seen and treated by licensed Illinois physician within community standards of care. 8-3-18 MD appt." (*Id.*). The grievance officer received the grievance on September 5th and reviewed it on September 26th, noting the counselor's response and adding "[a] review of [Plaintiff's] Call Pass history indicates [Plaintiff] has been seen by a medical professional on several occasions since the date of this grievance" (Doc. 48-3). The grievance officer recommended denying the grievance, which the warden concurred with on October 2nd (*Id.*). Plaintiff appealed to the ARB, where his appeal was denied on November 1, 2018 because the issues was appropriately addressed by the facility administration and Plaintiff had been seen by healthcare staff for his medical concerns (Doc. 48-4).

## DISCUSSION

It is undisputed that the July 2018 grievance went through every step of the grievance process and was thus fully exhausted (*see* Doc. 48-2; Doc. 48-3, Doc. 48-4). However, Dr. Ritz argues that the grievance cannot be used to exhaust as to him because the grievance did not name or describe him, did not reference or allude to him by role or

title, and did not describe his actions or attribute any of the objectionable conduct to him (Doc. 34, p. 6). The Court is unpersuaded by Dr. Ritz's argument.

Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . [E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")

Furthermore, when a case involves a continuing violation, the prisoner "need not file multiple, successive grievances raising the same issue" because "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley*, 729 F.3d at 650; *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the administrative grievance process on the exact same issue each time" a deprivation occurred).

Here, the July 2018 grievance indicates that Plaintiff was having ongoing issues with his ears and needed to see an outside ear doctor, which implies that he was seeking redress for an ongoing failure to provide adequate treatment at the prison. Prison officials' responses to the grievance demonstrate that they indeed understood the grievance to be a complaint about inadequate medical care. The grievance thus put the prison on notice of Plaintiff's issues regarding purportedly inadequate medical treatment for his ears.

Prison officials were also aware that Plaintiff's problems continued after he filed his grievance. The counselor's response on August 14, 2018 indicates that Plaintiff's medical records and the Health Care Unit Administrator were consulted in order to respond to the grievance. Those records showed that Plaintiff had been seen more than a dozen times in the healthcare unit over the previous five or so months about his ears, he had been prescribed at least six antibiotics, and he had been repeatedly denied a referral to an outside ENT. Additionally, the responses by the counselor and the grievance officer explicitly acknowledge that Plaintiff had received further treatment for his ears after he filed his July grievance. It therefore stands to reason that prison officials knew the full course of treatment that had transpired for Plaintiff's ears and knew which medical providers were involved, including Dr. Ritz. Under these circumstances, Plaintiff was not required to file a new grievance every time a new medical provider became involved in his care because his complaint remained the same—the treatment he was receiving for his ears was inadequate. As such, the Court finds that the July 2018 grievance was sufficient to exhaust as to Dr. Ritz and he is not entitled to summary judgment.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendant Stephen Ritz (Doc. 47) is **DENIED**.

This matter will proceed on Counts 1 and 2 (*see supra* p. 2). The stay on discovery on the merits of Plaintiff's claims (*see* Doc. 43) is **LIFTED**, and the parties can proceed with discovery. A new schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: October 26, 2020**

> s/ Mark A. Beatty
> **MARK A. BEATTY**
> **United States Magistrate Judge**